## FIXED RATE MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT AND DISCLOSURE STATEMENT
(This Contract Consists of Eight (8) Pages)


CHASE

Buyer's Name: Bobby D. Prewitt

Address: 200 Brentwood Circle | Athens | TX | 75751
(Number/Street) | (City) | (State) | (Zip)

Co-Buyer's Name:

Address:
(Number/Street) | (City) | (State) | (Zip)

Seller's Name: Palm Harbor Homes, Inc., LP/Country Place Homes

Address: 700 SSW Loop 323 | Tyler | TX | 75702
(Number/Street) | (City) | (State) | (Zip)

The undersigned Seller (hereinafter sometimes called Secured Party), hereby sells and the undersigned Buyer (meaning all of undersigned Buyers jointly and severally) hereby purchases, subject to the terms and conditions hereinafter set forth below, the following described manufactured home complete with furniture, appliances, attachments and equipment (including but not limited to those items specifically described below), all of which are hereinafter collectively called "Collateral" delivery and acceptance of which is in good order, hereby is acknowledged by Buyer.

Location of Collateral if other than Buyer's above address:

200 Brentwood Circle | Athens | TX | 75751
(Number/Street) | (City) | (State) | (Zip)

### DESCRIPTION OF MANUFACTURED HOME

New or Used: New   Manufacturer's Name: Palm Harbor

Year of Unit: 2002   Manufacturer's Serial No.: MP228801

Model Name & Model Number: Country Place – CPI37652

Unit Description: Length 76   Width 18   Color _____

| (X) | Item(s) | Serial Number | (X) | Item(s) | Serial Number |
|---|---|---|---|---|---|
| X | Air Conditioning | E2E0105 0542 | ☐ | Awning(s) | |
| X | Refrigerator | AA780627 | X | Skirting | |
| X | Range | GE143687 | ☐ | Dishwasher | |
| ☐ | Washer | | X | Steps | |
| ☐ | Dryer | | ☐ | | |
| ☐ | Furniture | | ☐ | | |

Form # TX4680 March, 2001
Texas Fed Preempt. Fixed Rate Simple Interest

Page 1 of 8

_____ Buyer's Initials   _____ Co-Buyer's Initials

EXHIBIT "A"

**ITEMIZATION OF AMOUNT FINANCED**

1. **Cash Price** (Including any accessories, services and taxes. This amount includes a Texas Inventory Tax of $ 43.25)     $ __30,142.25__ (1)

2. **Total Down Payment** *(Line 2A Plus 2B)*     $ __6,000.00__ (2)
   - A. Net Trade-In     $ __6,000.00__
     Trade-In Information (Year/Make/Model)
     __1992/Tiffany__
   - B. Cash Down Payment     $ __0.00__

3. **Unpaid Balance of Cash Price** *(Line 1 Minus Line 2)*     $ __24,142.25__ (3)

4. **Other Charges Including Amounts Paid to Others on Buyers' Behalf:** *(Lines 4A thru 4G)*     $ __55.00__ (4)

   - A. Cost of Physical Damage Insurance     $ __0.00__ **
   - B. Cost of Optional Credit Insurance *(Line B1 Plus Line B2)*     $ __0.00__ **
     1. Life Insurance $ __0.00__
     2. Disability, Accident & Health $ __0.00__
   - C. Official Fees Paid to Public Officers     $ __0.00__
   - D. Taxes Not Included in Cash Price     $ __0.00__
   - E. Government License and/or Registration Fees (Itemize)     $ __0.00__
   - F. Government Certificate of Title Fees     $ __55.00__
   - G. Other Charges (Seller must identify who will receive payment & describe purpose)
     - To _____ For _____     $ __0.00__ **
     - To _____ For _____     $ __0.00__ **

5. **Subtotal** *(Line 3 Plus Line 4)*     $ __24,197.25__ (5)

6. **Prepaid Finance Charges** *(Financed Portion of Line 8)*     $ __1,947.78__ (6)

7. **Total Amount of Contract** *(Line 5 Plus Line 6)*     $ __26,145.03__ (7)

8. **Total Prepaid Finance Charges** *(Lines 8A thru 8C)*     $ __1,947.78__ (8)
   - A. To __Chase__ For __Flood__     $ __12.00__
   - B. To __Chase__ For __Points__     $ __1,935.78__
   - C. To _____ For _____     $ __0.00__

9. **Amount Financed** *(Line 7 Minus Line 8)*     $ __24,197.25__ (9)

** We may retain, or receive, a portion of these amounts.

Page 2 of 8

Form # TX4680 March 2001
Texas Fed. Preempt. Fixed Rate Simple Interest

_BW_ Buyer's Initials _____ Co-Buyer's Initials

## PROMISE TO PAY

Buyer(s), jointly and severally, promise to pay to us the Total Amount of Contract, shown above, together with finance charge on the unpaid balances thereof from time to time, at the rate of 9.75% per annum until the Total Amount of Contract and any other sums you may become obligated to pay pursuant to the provisions of this Contract are fully repaid. However, Finance Charges after the scheduled maturity date on the Contract shall not exceed the maximum rate allowed by state law. Buyer will make payments according to the Payment Schedule shown below. The Payment Schedule assumes that each payment will be made exactly on the date due and in the amount scheduled. Accordingly, payments not made exactly according to the Payment Schedule may result in an increase or decrease in the total amount paid under the Contract. The final payment will equal the then remaining unpaid balance of the Contract, plus accrued and unpaid Finance Charge and other sums due hereunder, all as allowed by law. Prepaid Finance Charges, if any, shall be deemed fully earned by us when you execute this Contract.

| ANNUAL PERCENTAGE RATE  The cost of Buyers' credit as a yearly rate | FINANCE CHARGE  The dollar amount the credit will cost Buyers. | Amount Financed  The amount of credit provided to Buyers or on Buyers' behalf. | Total of Payments  The amount Buyers will have paid after Buyers have made all payments as scheduled. | Total Sale Price  The total sale of Buyers' purchase on credit, including Buyers' down-payment of  $ 6,000.00 |
|---|---|---|---|---|
| 10.68 % | $ 56,669.55 | $ 24,197.25 | $ 80,866.80 | $ 86,866.80 |

Buyers' payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| One Payment of | $ 0.00 | |
| 360 Payments of | $ 224.63 | Monthly, beginning July 29, 2001 |
| One Final Payment of | $ 0.00 | |

Security:    Buyer is giving a security interest in the property being purchased.
☐ Other

Lien Filing Fees: $ 0.00

Prepayment: If Buyer pays off early, Buyer will not have to pay a penalty.

Assumption: Someone buying Buyer's home may not, except under certain circumstances, be allowed to assume the remainder of this Contract on its original terms.

See the remainder of this Contract document for any additional information about non-payment, default, and required repayment in full before the scheduled date, and prepayment refunds and penalties.

*e* means estimate*

Form # TX4610 March 2001
Texas Fed. Preempt. Fixed Rate Simple Interest

Page 3 of 8
_____ Buyer's Initials  _____ Co-Buyer's Initials

**PROPERTY INSURANCE**
BUYER(S) IS (ARE) REQUIRED TO FURNISH PHYSICAL DAMAGE INSURANCE COVERING THE PROPERTY PURCHASED AND/OR THE PROPERTY IMPROVED BY THE GOODS AND SERVICES PURCHASED UNDER THIS RETAIL INSTALLMENT CONTRACT FOR THE TERM OF THIS CONTRACT. BUYER(S) SHALL HAVE THE OPTION OF FURNISHING THE REQUIRED INSURANCE EITHER THROUGH EXISTING POLICIES OF INSURANCE OWNED OR CONTROLLED BY HIM (THEM) OR OF PROCURING AND FURNISHING EQUIVALENT INSURANCE COVERAGES THROUGH ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.

The following apply as checked:
LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS
☐ IS INCLUDED   ☒ IS NOT INCLUDED.

| Type | Deductible | Premium | Term |
|---|---|---|---|
| Manufactured Home | $ 0.00 | $ 0.00 | 0 |
| Other | $ 0.00 | $ 0.00 | 0 |

Buyer(s) choose(s) to have Seller obtain the above Property Insurance for him (them) and authorize(s) Seller to include the charge for said Insurance in this Retail Installment Contract. Buyer(s) acknowledge(s) that (they) received a completed copy of this Authorization before he (they) consummated the Retail Installment Contract of even date herewith.

XX_____   X_____
 (Seller)           (Date)        (Buyer)           (Date)

                                 X_____
                                  (Co-Buyer)        (Date)

**CREDIT INSURANCE**
CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS BUYER(S) SIGN(S) AND AGREE(S) TO PAY THE ADDITIONAL COST.

If elected, Credit Life Insurance will be issued in an original amount of $ 0.00 for 0 months of coverage. This Credit Life Insurance may not cover the entire balance of this obligation at the time of death if the original coverage selected is for a term or for an amount which is less than the term or the amount of the credit.

If elected, Credit Disability Insurance will be issued for a maximum monthly disability benefit of $ 0.00 for 0 months of coverage. This Credit Disability Insurance may not cover the entire period of disability if the period of disability exceeds the term of the coverage.

Buyer(s) must indicate choice(s) by checking the applicable box(es). The charge for any Insurance chosen by Buyer(s) will be included in this Retail Installment Contract.

I/WE DESIRE:
☐ Single Credit Life Insurance (on Buyer)                    --- Cost $ 0.00
☐ Joint Credit Life Insurance (on Buyer and Co-Buyer)        --- Cost $ 0.00
☐ Credit Disability Insurance (on Buyer)                     --- Cost $ 0.00

FOR THE PURPOSE OF OBTAINING THE INSURANCE REQUESTED ABOVE, BUYER(S) HEREBY STATE(S) THAT HE (THEY) IS (ARE) NOT CURRENTLY DISABLED, AND IS (ARE) IN GOOD HEALTH.

Buyer(s) acknowledge(s) that he (they) made the choice(s) marked and that he (they) received a completed copy of the within Authorization before he (they) consummated the Retail Installment Contract of even date herewith.

XX_____   X_____
 (Seller)           (Date)        Buyer              (Date)

                                 X_____
                                  Co-Buyer           (Date)

Page 4 of 8

Form # TX4680 March, 2001
Texas Fed. Preempt. Fixed Rate Simple Interest

_____ Buyer's Initials   _____ Co-Buyer's Initials

## OTHER IMPORTANT PROVISIONS

1. **Security Interest:** Buyer grants to Secured Party a purchase money security interest under the Texas Uniform Commercial Code in the Collateral, accessions thereto and all proceeds therefrom, as well as in all additional property thereon, whether or not listed above, until this Contract, including refinancings and renewals hereof is paid in full. Despite any other provision of the Contract, however, Seller is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law.

2. **Ownership and Risk of Loss:** It is agreed that the Collateral, wherever placed, shall remain personal property and shall not become part of any freehold. Buyer agrees to execute, at Seller's request, sufficient documentation to enable Seller to perfect its security interest in the personal or real property, or both, securing this transaction, and, if Buyer applies for a Certificate of Title, Buyer will have Seller's lien noted thereon, and will, if allowed by law, deliver or cause to be delivered the Title to Seller.

   Buyer agrees that he will not sell, assign, rent or dispose of all or any part of said Collateral or his interest therein; that he will pay all taxes and assessments of any nature; that he will maintain the Collateral and keep it in good repair, and will not allow the Collateral to deteriorate in condition or value beyond normal wear and tear; that he will not permit or allow any adverse lien or encumbrance whatsoever; that he will not use the Collateral or any part thereof in violation of any state, federal, or municipal law, and that he will not remove the Collateral from the state and county of residence without the written consent of the Seller.

3. **Insurance:** Neither loss nor injury to said Collateral shall relieve Buyer of his obligation hereunder. Buyer agrees that he will at his own expense obtain and keep in force fire, flood (if the Collateral is or should be located in a federally designated area having special flood hazards), theft and comprehensive insurance, and collision insurance when said Collateral is being moved, for such periods and amounts and written by such insurers as may be satisfactory to the Seller, with proceeds thereof to be payable as the interests of the parties shall appear. If no cost of insurance coverage upon said Collateral is included herein, Buyer shall deliver to the Secured party a fully paid policy of insurance against the aforementioned hazards within five days from the date hereof, with a loss payable clause in favor of the Secured Party. If Buyer fails to deliver such policy, or if any policy required hereunder is subsequently canceled or expires, Buyer shall immediately furnish to the Secured Party a fully paid replacement policy suitable to the Secured Party. If Buyer fails to perform, Buyer agrees that Secured Party is authorized to and may, at its sole option, obtain or renew, and pay premiums for, the insurance coverages Secured Party, in its sole discretion, believes necessary. Buyer agrees that insurance coverages so obtained may cover Buyer's interests and Secured Party's interests, all as allowed by law. If Secured Party exercises this contractual right, the insurance policy may be placed by an affiliated insurance agency which may realize a financial benefit from the transaction. Buyer promises to repay the cost thereof within 10 days of notice by the Secured Party and if not so repaid, such amounts shall be added to, become a part of, and earn finance charge at the same rate as the debt secured hereby. In order for Secured Party to exercise its option under the circumstances given above to so insure or renew coverage, Buyer grants secured party the right to use or disclose any and all information Secured Party deems relevant to the placing of such insurance coverage. Buyer assigns to Secured Party all amounts in payment of insurance losses or representing return of unearned premium for the purposes of, at Secured Party's sole option, being applied to Buyer's debt hereunder, being used for the purpose of repairing, replacing or restoring said Collateral, or both. Any excess, after the application of such amounts per Secured Party's option, shall be returned to Buyer. In order to implement the assignment contained immediately above for the purposes set forth therein, to the extent permitted by law, Buyer appoints Secured Party as his Attorney-in-Fact to do the following: (a) accept refunds of unearned insurance premiums, (b) make all adjustments for loss, (c) accept proceeds of settlement on claims made on said insurance policies, (d) sign Buyer's name upon any checks, drafts and documents required in connection with any loss or refund.

Form # TX4680 March, 2001
Texas Fed. Preempt. Fixed Rate Simple Interest

Page 5 of 8

_____ Buyer's Initials _____ Co-Buyer's Initials

4. **PREPAYMENT: BUYER MAY PREPAY THIS OBLIGATION IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY.** Accrued charges to date of prepayment must be paid at the time of prepayment. Prepaid Finance Charge, if any, will not be subject to refund or rebate if Buyer prepays this Contract in full or in part.

5. **Usury:** Buyer and Seller intend to conform strictly to applicable usury laws. Therefore, the total interest (as defined under applicable law) contracted for, charged or received under this Contract will never exceed the Highest Lawful Rate. If Seller contracts for, charge or receive any excess interest, it will be deemed a mistake. Seller will automatically reform this Contract or the charge to conform to applicable law, and if Seller has received excess interest, Seller will either refund the excess to Buyer(s) or credit the excess on the unpaid balance of this Contract. In determining whether interest exceeds the Highest Lawful Rate, all interest contracted for, charged or received will be spread over the entire term of this Contract.

6. **Exercising Seller's Rights; Attorney's Fees:** If the Buyer remits payments which are less in amount than as specified herein, acceptance of same by the Secured Party shall not constitute a novation, either expressed or implied, nor shall the original terms be waived thereby. Parties hereto agree that a waiver by the Seller of any default or acceptance by Seller of any payment required hereunder after the same is due shall not constitute a waiver of this or any other provision hereunder. If the holder hereof institutes a collection suit and obtains a money judgment against the Buyer, Buyer agrees to pay the holder's reasonable attorney's fees, as well as court costs.

7. **Default, Right to Cure Default and Remedies on Default:** ALL THE PROVISIONS OF THIS PARAGRAPH ARE SUBJECT TO THE APPLICABLE NOTICE AND RIGHT TO CURE DEFAULT PROVISIONS CONTAINED IN THIS CONTRACT AND UNDER APPLICABLE STATE AND FEDERAL LAW. If Buyer defaults in the payment of any installment due or in the performance of any conditions required hereunder or if Buyer violates any of the terms and provisions set forth herein, Secured Party must give Buyer a notice giving the Buyer 30 days after the notice is sent in which to cure the default. Buyer is not, however, entitled to such notice of default more than twice in any one-year-period or if the Collateral is abandoned. After the 30-day-period has elapsed and the Buyer has not cured his default, or immediately upon Buyer's default, if Buyer has already received two notices of default in the one-year-period preceding the current default or has abandoned the Collateral, the entire unpaid balance due hereunder, less any refunds of unearned charges computed as upon prepayment, shall become due and payable in accordance with the Provisions hereof at the option of the Secured Party. Secured Party shall thereupon have all the remedies of a Secured Party under the Texas Uniform Commercial Code, including without limitation thereto the right without demand or notice to take peaceable possession with or without process of law, of any and all of said Collateral, and, upon such notice as is required by law, to sell the Collateral so taken at public or private sale. Secured Party may become Purchaser at any public sale. Secured Party shall apply the proceeds of any sale, less the expenses of retaking, storing, repairing, selling and Seller's reasonable attorney's fees, as allowed by law, to the unpaid balance hereof, and render any excess to the Buyer. Buyer promises to pay on demand and shall remain liable for payment of any deficiency balances remaining after the proceeds of sale, if allowed by law, less expenses of retaking, storing, repairing, selling and Seller's reasonable attorney's fees, as allowed by law, have been applied for the obligation. In taking possession of the Collateral, the Secured Party may enter, as allowed by law, upon the premises on which the Collateral or any part thereof may be situated and remove the same therefrom. To the extent permitted by law, Secured Party may take possession of any personal effects in or upon the Collateral when repossessed and may hold such property without liability. To the extent permitted by law, Buyer agrees that his failure to claim any such personal effects within thirty (30) days after repossession of the Collateral shall be deemed an abandonment of such personal effects and shall bar any subsequent claim therefor.

8. **Additional Provisions:** The Buyer represents that the allowance set forth for the property traded in is the monetary value thereof assigned thereto in good faith, and that no extension of credit other than that recited herein exists or is to be made to him in connection with the purchase of the Collateral described herein. Buyer

Form # TX4680 March, 2001　　　　　　　　　　　Page 6 of 8
Texas Fed Preempt. Fixed Rate Simple Interest　　　　　　　　　　_____ Buyer's Initials  _____ Co-Buyer's Initials

Jun-15-2001 08:44am   From-CHASE MORTGAGE   2818770026   T-000  P.008/023  F-467

warrants that the property deeded in is free from any encumbrances, and breach of this warranty shall be a breach of this Contract.

9. **DISCLAIMER OF WARRANTIES:** NO WARRANTIES, EXPRESS OR IMPLIED, FOR MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, HAVE BEEN MADE BY SELLER ABOUT THE MANUFACTURED HOME. BUYER ACKNOWLEDGES HAVING EXAMINED THE MANUFACTURED HOME, AND, IF IT IS USED, ACCEPT THE MANUFACTURED HOME "AS IS". This Disclaimer Does Not Affect (1) Any Warranties Required Under Federal or State Law, (2) Any Warranties From The Manufacturer, (3) Written Warranties By The Seller Or (4) Service Contracts Made With The Seller Within 90 Days From The Date Of This Contract.

10. **Interpretation of Agreement; Assignment:** Whenever in this Contract the context so admits, the names of Buyer and Secured Party and the terms "Buyer" and "Secured Party" shall be construed as including the heirs, representatives, successors and assigns as the case may be, and the designation used herein for the parties shall be construed as meaning the person, number and gender appropriate to the first designation of the parties. Paragraph headings are for convenience only and shall not be used in the interpretation of this Contract. Buyer agrees that, in the event of assignment hereof, the assignee shall be entitled to all the rights and remedies of the Seller hereunder. Seller shall not be agent of the assignee for transmission of payments or for any other purpose, and upon notice of assignment, payment to anyone other than the assignee is at Buyer's risk.

11. **Entire Agreement; Governing Law:** Buyer agrees that this Contract constitutes the entire agreement between the parties and that any changes hereto must be in writing and signed by the parties. If the information is not available at the time of signing, Buyer authorizes Seller to insert identifying numbers or marks of the Collateral in the space provided herein on or about the date of delivery. The Parties mutually agree that the laws of the State of Texas shall govern each and every provision herein. Any provisions of this Contract prohibited by law in the state where executed shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.

12. **Information Sharing:** Buyer consents the Seller and its family of companies may share information from and about Buyer and Buyer's accounts with each other and with others, including information that may be used to offer banking, insurance and investment products to Buyer, except to the extent that Buyer instructs Seller otherwise in accordance with Fair Credit Reporting Act Disclosures. More details regarding Seller's rights to share information will be provided to the Buyer after the closing of this transaction.

13. **Credit Reporting:** Seller may obtain consumer credit reports periodically from one or more consumer reporting agencies (credit bureaus) in connection with Buyer's application and any update, renewal, refinancing, modification or extension of this Contract. Seller or any affiliate of Seller may obtain one or more consumer credit reports on Buyer from time to time for any legitimate business purpose. If Buyer asks, Buyer will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which Seller or Seller's affiliate obtained Buyer's credit report. Seller may also verify Buyer's employment, pay, assets and debts. Buyer agrees that anyone receiving a copy of this authorization is authorized to provide Seller with such information.

Form # TX4680 March. 2001
Texas Fed. Preempt Fixed Rate Simple Interest

Page 7 of 8

_____ Buyer's Initials  _____ Co-Buyer's Initials

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NOTICE: To contact Chase Manhattan Bank USA, N.A. c/o Chase Manhattan Mortgage Corporation about this account call 1-800-437-4892. This Contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 North Lamar Boulevard, Austin, Texas, 78705-4207. Phone: (512) 936-7600 or (800) 538-1579. Contact the commissioner relative to any inquiries or complaints.

The Buyer understands and agrees that the Contract provisions on the pages one through eight (pages 1-8) hereof are hereby incorporated by reference and constitute a part of this Contract.

NOTICE TO THE CONSUMER: DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE. KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.

The Buyer hereby acknowledges that he has received from the Seller a true copy of this foregoing document with all blanks suitably filled, and that such a copy was delivered to him by the Seller at the time of the execution thereof.

Executed by the parties this _29th_ day of _JUNE_ _2001_
(Month) (Year)

Palm Harbor Homes, Inc., L/ /Country Place Homes      X _Bobby D. Prewitt_ (SEAL)
(Name of Dealer-Seller)                                  (Signature of Buyer)
XX_____                        X _____ (SEAL)
(Signature of Representative)                             (Signature of Co-Buyer)

Each Buyer acknowledges that he/she is signing and initialing only one (1) original of this Contract, that the original Contract will be in the possession of the Seller or the Seller's assignee, and that the initial assignee will be Chase Manhattan Bank USA N.A. c/o CMMC.

X _Bobby D. Prewitt_                                   X _____
(Signature of Buyer)                                     (Signature of Co-Buyer)

In consideration of granting this credit to the Buyer named above, and not for purposes of being obligated hereunder, the undersigned hereby grants to the Seller a security interest in the Collateral described herein and all proceeds thereof, in accordance with all of the terms and conditions of this Retail Installment Contract.

_____                          _____
(Witness)                                                (Date)

Form # TX4680 March, 2001                              Page 8 of 8
Texas Fed. Preempt Fixed Rate Simple Interest          _____ Buyer's Initials  _____ Co-Buyer's Initials

# TEXAS DEPARTMENT OF HOUSING AND COMMUNITY AFFAIRS

## TEXAS ORIGINAL CERTIFICATE OF OWNERSHIP
### MANUFACTURED HOME DOCUMENT OF TITLE

THIS DOCUMENT OF TITLE MAY NOT REFLECT THE EXISTENCE OF A TAX LIEN. INFORMATION MAY BE OBTAINED FROM THE DEPARTMENT ON WRITTEN REQUEST.

**DATE OF CERTIFICATE:** 08/28/2001

**CERTIFICATE NUMBER:** 01217463

**MANUFACTURER:** PALM HARBOR HOMES I LP
I-35 @ COUNTY 210
BUDA, TX 78610

**MODEL DESCRIPTION:**

**COUNTY WHERE INSTALLED:** HENDERSON

**DATE OF MANUFACTURE:** 06/01/2001

**LABEL/SEAL NUMBER:** PFS0715857

**SERIAL NUMBER:** PH222801

**WEIGHT:** 29800

**SIZE (EXCLUDING HITCH):** 18.0 X 76.0

**WIND ZONE:** 1

**TOTAL SQ FEET:** 1330

SECTION ONE
SECTION TWO
SECTION THREE
SECTION FOUR

**OWNER:** BOBBY D. FREWITT
299 BRENTWOOD CIRCLE
ATHENS, TX 75751

**HOME IS SUBJECT TO THE FOLLOWING MORTGAGE LIENS IN FAVOR OF**

**FIRST LIEN:** 06/29/2001 CHASE MANHATTAN BANK USA NA
C/O CMMC
450 GEARS RD #110
HOUSTON, TX 77067

Signature _____ Title _____ Date _____

**SECOND LIEN:**

Release of Lien:

**NOTARY** NOTARY STAMP
NOTARY SIGNATURE   DATE

**RIGHT OF SURVIVORSHIP:** ☐ YES ☒ NO

**SELLER:** DBA COUNTRYPLACE HOMES
700 SSW LOOP 323
TYLER, TX 75702

**SIGNATURE OF OWNER(S)**

EACH OWNER MUST SIGN DOCUMENT OF TITLE IMMEDIATELY UPON RECEIPT

[Signature]
DAISY STINER
EXECUTIVE DIRECTOR

**NOTARY** NOTARY STAMP
NOTARY SIGNATURE   DATE

EXHIBIT "B"